**John E. MALLOY, Receiver of Korf's Sixth Avenue, Incorporated, Plaintiff,**

v.

**Arthur F. KORF, Defendant.**

**Civ. A. No. 72–C–168.**

United States District Court, E. D. Wisconsin.

Dec. 27, 1972.

Burton Lepp, Kenosha, Wis., for plaintiff.

Robert K. Steuer, Milwaukee, Wis., for defendant.

## OPINION AND ORDER

REYNOLDS, District Judge.

This is an action brought by the state receiver of Korf's Sixth Avenue Inc., against Mr. Korf, the corporation's former president and principal stockholder, to recover the value of certain transfers made by Mr. Korf to pay off a note that he had personally secured while the corporation was insolvent and going out of business. The action was removed from the Circuit Court of Kenosha County on the basis of diversity of citizenship. Defendant moves to dismiss.

On January 7, 1971, when defendant knew the corporation to be insolvent, he granted The First National Bank of Kenosha (hereafter "Bank") a security interest in the corporation's accounts, contract rights, and chattel paper to secure a pre-existing corporate debt which he had personally guaranteed. Financing statements were filed on January 8,

1971, with the Register of Deeds of Kenosha County and the Secretary of State of Wisconsin. The effect of the transfer was to prefer the Bank over other creditors and to relieve Mr. Korf of his personal obligation on the note. The receivership petition was filed on August 13, 1971, at which time plaintiff was appointed.

■ The parties agree that under Wis.Stats. § 128.07(2) the plaintiff could have avoided the preference as against the preferred creditor had it been given within four months of the filing of the receivership petition. Conversely the plaintiff's failure to assert his claim in a timely manner bars any action under the statute.[1] An action under the Uniform Fraudulent Conveyance Act must also fail because the consideration for the transfer was adequate, and because plaintiff does not seek recovery of the transferred property, the only remedy the Act provides.[2]

■ Nevertheless plaintiff contends defendant is personally liable for the value of the transfer (1) because the transfer was, in fact, a preference to the defendant which under Wisconsin common law was voidable by the receiver and alternatively, (2) because defendant breached a fiduciary duty to the creditors and is required by equity to make restitution. I find plaintiff's second claim to be valid and therefore deny defendant's motion to dismiss.

■■ Plaintiff's first claim i. e., the transfer was a preference to the defendant, assumes that early Wisconsin common law dealing with the recovery of preferences from preferred creditors was not superceded by the enactment of Wis.Stats. § 128 in 1937. Wisconsin common law prior to 1937 followed the rule of the majority of states and considered preferences made by an insolvent corporation to its own officers voidable as against the preferred creditor, though preferences to others were allowed. Schmitz v. Wisconsin Soap Manufacturing Co., 204 Wis. 149, 235 N.W. 409 (1931) (dictum), Haywood v. Lincoln Lumber Co., 64 Wis. 639, 26 N. W. 184 (1885). It is not necessary to decide whether that rule would apply to the transfer here for I find the common law on the recovery of preferences has been superceded in Wisconsin by § 128. That statute was designed to establish a state proceeding modeled after the bankruptcy proceeding established in § 60 of the Federal Bankruptcy Act. Both statutes reflect the view that the theory of voidable preferences is not concerned with the culpability of any party to the

---

1. Wis.Stats. § 128.07(2) (1969) provides: "(2) If the debtor shall have given a preference within four months before the filing of a petition, or an assignment, or after the filing of the petition and before the appointment of a receiver, or after the filing of an assignment and before the qualification of the assignee, and the person receiving it, or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that the enforcement of such judgment or transfer would effect a preference, it shall be voidable by the receiver or assignee, and he may recover the property or its value from such person."

2. Chapter 242 of the Wisconsin Statutes is the Uniform Fraudulent Conveyance Act. Section 242.04 provides: "Contract Producing Insolvency, Fraudulent. Every conveyance made and every

obligation incurred by a person who is or will be thereby rendered insolvent is fraudulent as to creditors without regard to his actual intent if the conveyance is made or the obligation is incurred without a fair consideration."
Section 242.09 provides:
"Remedies of Creditors. (1) Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser, (a) Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or (b) Disregard the conveyance and attach or levy execution upon the property conveyed.
* * * "

preference. Goetz v. Zeif, 181 Wis. 628, 195 N.W. 874 (1923); see also Heller, "Colorable Transfers, Fraudulent Conveyances, and Preferences in State and Federal Liquidation Proceedings," 1939 Wis.L.Rev. 360, 377. Both statutes effect a compromise between the desire to treat all creditors of the same class equally, and the need to provide creditors some assurance of their right to the transferred goods as against a trustee or receiver. To hold that the four-month deadline can be circumvented by a receiver whenever the officers of the corporation have personally benefited from the preference would be to cloud the title of goods transferred through a preference indefinitely. The very absence of cases concerning preferences since the passage of § 128 strongly implies that Wisconsin courts have generally treated its clear standards for avoiding preferences as the only standards.

Plaintiff's second question deals with an alleged breach of fiduciary duty by a corporate officer. The plaintiff claims that even if he may not recover the preference from the defendant as a "preferred creditor" he may nonetheless maintain an action against him for breach of his fiduciary obligation as a corporate officer. Plaintiff contends defendant violated the fiduciary duty recognized by the Wisconsin Supreme Court in Hinz v. Van Dusen, 95 Wis. 503, 70 N.W. 657 (1897):

> "It is when a corporation ceases to be a going institution, or its business is in such shape that its directors know, or ought to know, that suspension is impending, that its assets in the hands of such directors become, by equitable conversion, a trust fund for the benefit of its general creditors, so that, if such directors prefer themselves over such general creditors, such action constitutes a fraud in law,

and equity will compel them to make restitution of all property thereby diverted to their personal benefit to the prejudice of such creditors." Id. at 508, 70 N.W. at 659.

Hinz has not been overruled, nor has any subsequent state statute dealt with the rights or duties of corporate officers in this situation. Wis.Stats. § 180.40 does list specific liabilities of corporate officers, but it expressly states that such liabilities are in addition to any others imposed by common law.[3]

The Wisconsin Supreme Court has not suggested whether § 128 should affect the duty stated in Hinz or whether the four-month limitation should apply to actions concerning that duty. The resolution of those issues depends on whether the rule of Hinz is contrary to the purposes for which § 128 was enacted, and it therefore becomes necessary to consider what those purposes were.

Surely Hinz is not contrary to the purpose of ensuring equal treatment for all creditors of the same class. Since Hinz only applies to actions against fiduciaries for restitution and does not deal with rights of preferred creditors, it also does not affect the major purpose of the four-month deadline which, as stated above, was to provide preferred creditors with a point beyond which they could deal freely with the transferred goods without fear of liability to a future trustee or receiver in bankruptcy.

The construction of § 128 that defendant suggests does have the advantage of reducing litigation. Were that construction adopted, trustees and receivers could never attack transfers made before the four-month period except through the Uniform Fraudulent Conveyance Act. I assume, without deciding, that the goal of reducing litigation in this realm of commercial activity is a worthy

---

3. Wis.Stats. § 180.40(1) (1969) provides in part:
 "Liability of Directors and Shareholders.
 (1) In addition to any other liabilities imposed by law upon directors of a corporation: . . ."

one, and that to some extent § 128 reflects it. However, I do not believe allowing an equitable action in the limited circumstances presented here—where the transfers which wrongfully benefited the corporate officer were made while the corporation was insolvent *and* going out of business—will produce a serious amount of unwarranted litigation.

That this decision will deter corporate officers from personally guaranteeing the debts of their corporation for fear that they will not be able to later give the creditor the same preference they might otherwise have given him is no answer. Many of the fiduciary liabilities imposed by law on corporate officers deter them from involving themselves personally in corporate activities even though their involvement may benefit the corporation. Cf. Koelbel v. Tecktonius, 228 Wis. 317, 280 N.W. 305 (1938); Johnson v. Crook, 216 Wis. 534, 257 N.W. 453 (1934); Thauer v. Gaebler, 202 Wis. 296, 232 N.W. 561 (1930); McDermott v. O'Neil Oil Co., 200 Wis. 423, 228 N.W. 481 (1930).

Defendant contends that the rule of *Hinz* should not apply to him because preferring a debt on which one is guarantor does not amount to the transfer which *Hinz* condemns. But I cannot ignore the obvious benefit defendant received from the transfer to the Bank. His liability will, in any event, be limited to the amount he would have had to pay the Bank as a result of his personal guarantee of the loan had the transfer not been made.

This decision should not be taken as upholding Nineteenth Century common law designed to balance the equities of particular cases against Twentieth Century statutes designed to facilitate the planning and activities of businessmen and lawyers in the commercial community. But the fiduciary standards and equitable remedies against unethical behavior created by the common law will remain intact until shown to conflict with the needs of the commercial community that subsequent statutes reflect.